[Cite as *In re R.T.*, 2013-Ohio-1139.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
|  | : | Patricia A. Delaney, P.J. |
|  | : | Sheila G. Farmer, J. |
| R.T., JR. | : | John W. Wise, J. |
|  | : |  |
|  | : | Case No. 2012CA00220 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Civil Appeal from Stark County
Court of Common Pleas, Family
Court Division, Case No.
2010JCV01342

JUDGMENT:        Affirmed

DATE OF JUDGMENT ENTRY:        March 18, 2013

APPEARANCES:

For Stark County Job and
Family Services

JAMES B. PHILLIPS
221 Third Street, S.E.
Canton, Ohio 44702

For Appellant

AARON KOVALCHIK
116 Cleveland Ave., N.W.
Suite 808
Canton, Ohio 44702

*Delaney, J.*

{¶1} Appellant, T.W. (mother), appeals from the November 1, 2012, Judgment Entry of the Stark County Court of Common Pleas, Family Court Division, terminating her parental rights and granting permanent custody of R.T., Jr. to Stark County Department of Job and Family Services.

<u>STATEMENT OF THE FACTS AND CASE</u>

{¶2} R.T., Jr. (DOB 8/19/09) is the child of appellant T.W. and R.T., who is not part of this appeal. On November 30, 2010, the child was placed into the emergency temporary custody of Stark County Department of Job and Family Services ("SCDJFS"). On December 1, 2010, SCDJFS filed a complaint alleging that R.T., Jr. was a neglected and/or dependent child. As memorialized in a Magistrate's Order filed on December 2, 2010, R.T., Jr. was placed in the temporary custody of SCDJFS following a shelter care hearing.

{¶3} Thereafter, on February 1, 2011, appellant stipulated to a finding of dependency and the trial court found R.T., Jr. to be a dependent child. The court ordered that the child remain in the temporary custody of SCDJFS.

{¶4} On July 19, 2012, SCDJFS filed a motion requesting a change of legal custody of R.T., Jr. to a relative. SCDJFS, in its motion, alleged that appellant had lost housing, continued using marijuana, had not completed case plan services, and was unable to care for R.T., Jr. However, after the relative indicated that he was no longer willing to accept custody of R.T., Jr. or to maintain his placement, SCDJFS, on August 28, 2012, filed an amended motion seeking permanent custody of R.T., Jr.

{¶5} A hearing on SCDJFS' motion was held on October 23, 2012. At the hearing, Cheri Smith, a caseworker with SCDJFS, testified that R.T., Jr. had never been out of the temporary custody of the agency since November 30, 2010. Smith testified that she prepared a case plan for appellant that addressed concerns over drug abuse, instability in employment and housing, and domestic violence between appellant and R.T., Jr.'s father. The case plan required appellant to attend Well Child appointments for R.T., Jr. so that she would remain informed about his health, to submit to random urine screens, to submit to alcohol and substance abuse assessments at Quest and follow all recommendations, and to complete a parenting assessment at Northeast Ohio Behavioral Health and to follow any recommendations. Northeast Ohio Behavioral Health recommended that appellant attend Renew, maintain stable housing and employment, attend individual counseling, and attend Goodwill Parenting classes. Smith testified that appellant completed a parenting evaluation and Goodwill Parenting. Appellant, however, did not complete Renew. Smith testified that appellant "went for several months, October, November, and December of last year she attended Renew. However, in February she did not go back. She was scheduled again for a reassessment on 8/21 of 2012 and she no-showed for that assessment…" Transcript at 10.

{¶6} Appellant also failed to complete Quest. According to Smith, appellant had been doing well, but dropped out and cancelled a reassessment that had been scheduled for August over substance abuse concerns. Appellant had testified positive for marijuana on May 14, 2012. Smith testified that appellant missed six sessions at

Quest that she needed to complete. On October 11, 2012, appellant again tested positive for marijuana.

{¶7} Smith further testified appellant had recently become employed part-time as a secretary, but that appellant had failed to maintain any form of stable employment during the two years of the case. She testified that appellant was only employed one other time for a brief period during the pendency of the case. Appellant also lacked housing, having lost her housing in March of 2012. Smith testified that appellant told her that she was staying with her father, but refused to give Smith the address. As a result, Smith was unable to determine if the house was appropriate or not.

{¶8} Smith, when asked, indicated that she had concerns about appellant being involved with R.T., Jr.'s father. She testified that she had been told by relatives and others that appellant and R.T. were still involved, but that appellant denied such involvement. Smith further testified that appellant had a history of going back to R.T. The following testimony was adduced when Smith was asked whether she believed that appellant had completed enough services to reduce the risk to the child:

{¶9} "A. No, I do not.

{¶10} "Q. Why do you say that?

{¶11} "A. Because just recently I've had a urine screen, or not, sorry, a swab, where she was positive for marijuana. She was very well informed. We had our conversations and I'm sure she has also spoken with her attorney about what needed to be done still, like Quest and Renew. She does not have housing. I can't confirm or deny whether the home that she's currently staying in is appropriate for [R.T., Jr.] I

don't see where we've made much of any progress from when I became involved in this case to this point."  Transcript at 13.

{¶12} Smith also testified that appellant visited with R.T., Jr. consistently throughout the case and that she loved him and he had a bond with her. She testified that the agency could not grant any more extensions in this case and that she believed that the child would be at risk if returned to appellant because appellant used marijuana, lacked stable housing, and there were concerns that she was still involved with R.T. She testified that she did not believe that appellant had made much progress during the case.

{¶13} On cross-examination, Smith testified that appellant had completed Quest Women's Issues Group, but had not completed the entire Quest program. Smith testified that although appellant successfully completed Goodwill Home Based parenting, there were concerns over appellant smoking in the home because R.T., Jr. had asthma. The following testimony was adduced when Smith was asked why the child was never returned home even though appellant had successfully completed Goodwill Home Based:

{¶14} "A. She completed, yes.

{¶15} "Q. Okay, but yet we never returned them?

{¶16} "A. No, we did not.

{¶17} "Q. Even though at the particular time her urine screens were clean and she had housing.

{¶18} "A. She did.

**{¶19}** "Q. She had completed at least enough of the program to permit home visits.

**{¶20}** "A. Yes.

**{¶21}** "Q. So what happened from the time where we're ready to return to now we have a motion for Permanent Custody pending?

**{¶22}** "A. Well, first of all there's been a quite a bit of time that's gone by since then.  There were concerns that Mom's residence I was alerted that there were concerns at Mom's residence that the Father was harassing her and that there was some more domestic violence issues that were occurring.

**{¶23}** "Q. Anyone charged with domestic violence?

**{¶24}** "A. I have the reports.  There were no charges, but there were numerous calls to her residence for that reason."  Transcript at 17-18.

**{¶25}** On cross-examination, Smith testified that appellant had three or four sessions left at Renew when she left. She also testified that appellant maintained the same housing from September of 2011 until March of 2012. According to Smith, a majority of appellant's urine screens were dirty. Smith also testified that she was still receiving reports of possible domestic violence between appellant and R.T. after appellant had dropped out of the Renew program.

**{¶26}** At the best interest portion of the hearing, Smith testified that the child had been in the temporary custody of the agency since November 30, 2010. She testified that the child was Caucasian, was around three years old, and that he has asthma that was not being treated with medication.  Smith testified that R.T., Jr. was very angry and that he had had severe temper tantrums and kicked and bit. In a previous home, he had

pushed a two year old down some steps. According to Smith, in the two different homes that he had been in, R.T., Jr. spread feces on the walls and furniture and urinated in a closet. She testified that he had been in a new home since September 10, 2012, and was not exhibiting such behavior in the current foster home.

**{¶27}** In total, R.T., Jr. has had six placements. Smith testified that a couple were due to his behaviors and that some were because of attempts to reunite him with the family. He was initially placed with an aunt, but had to be moved because the aunt allow appellant and R.T. access to R.T., Jr. The child then did well in the foster home until he was moved into a house with his sister, who was medically fragile. Smith testified that at such time, they started seeing the above behavioral problems. Because that foster mother was unable to handle the behavioral problems, R.T., Jr. was moved back to the original foster home. After that foster family was no longer willing to adopt R.T., Jr. he was placed with appellant's stepfather and his current partner in June of 2012. Smith testified that R.T., Jr. did well for a while, but that then his behavior worsened and he pushed a two year old down some steps. R.T., Jr. was then moved to his current foster home. Smith also testified that he had had been in such home since September 10, 2012 and that such foster family, who had two other adopted children with similar behaviors, was interested in adopting him.

**{¶28}** When asked, Smith testified that two other relatives had come forward to be considered for home placement. One was appellant's cousin who never came into be fingerprinted and did not call back to have the home study completed despite being contacted numerous times by the agency. The second was the father's sister. Smith testified that, after a home study, the sister was approved, but that the sister told Smith

that she could only care for R.T., Jr. on a temporary basis until appellant and R.T., Jr. got their act together.  Such relative did not want to adopt the child.

{¶29} Smith testified that there was a bond between appellant and R.T., Jr. and that R.T., Jr. loved appellant.  Smith testified that the interaction between appellant and R.T., Jr. had been limited and that he had seen her every couple of weeks over the last two years, Smith voiced concerns that appellant did not interact enough with R.T., Jr. during the visits. When asked if the benefit of permanent custody outweighed any harm in breaking the bond between appellant and her son, Smith testified affirmatively and indicated that R.T., Jr. needed stability and had been moved around too much.

{¶30} On cross-examination, Smith testified that R.T., Jr. did not exhibit any of the behavioral problems during his visits with appellant. She admitted that it was not until R.T., Jr. had been moved into the same home as his sister that he began exhibiting behavioral problems.

{¶31} At the hearing, father R.T.'s sister testified that she was unwilling to adopt R.T., Jr. but would keep him temporarily until appellant and R.T. got their act together. She testified that she could not guarantee that she and her husband would be willing to keep R.T., Jr. until he turned 18 and that it was not her intention to do so. She testified that she would not put R.T., Jr. in harm's way by returning him to his parents.

{¶32} At the hearing, the Guardian ad Litem testified that appellant's ICAN housing had been cancelled over concerns about domestic violence and that the "domestic violence thing has been going on for years,.." Transcript at 55.   She also stated that she observed the last visit that appellant had with R.T., Jr. and that during the two hour visit, appellant was on the phone for at least 45 minutes and that the rest

of the time appellant had little interaction with R.T., Jr. She stated that it was in the child's best interest for permanent custody to be granted to the agency.

**{¶33}** Pursuant to a Judgment Entry filed on November 1, 2012, the trial court terminated appellant's parental rights and granted permanent custody of R.T., Jr. to SCDJFS. On the same date, the trial court filed Findings of Fact and Conclusions of Law.

**{¶34}** Appellant now raises the following assignments of error on appeal:

**{¶35}** "I. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

**{¶36}** "II. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

I, II

**{¶37}** Appellant, in her two assignments of error, argues that the trial court erred in awarding permanent custody of the child to SCDJFS. Appellant specifically contends that SCDJFS failed to prove by clear and convincing evidence that the child could not or should not be placed with appellant within a reasonable amount of time and that an award of permanent custody was in the child's best interest.

**{¶38}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant,

competent, and credible evidence upon which the finder of fact could base its judgment. *Cross Truck Equipment Co. v. The Joseph A. Jeffries Co.,* 5th Dist. No. CA5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶39} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St .3d 415, 419, 674 N.E.2d 1159 (1997).

{¶40} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶41} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the

child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶42} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶43} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶44} In this case, the trial court found by clear and convincing evidence that the child had been in the temporary custody of a public children services agency for twelve or more months of a consecutive twenty-two-month period pursuant to R.C. 2151.414(B)(1)(d). Appellant does not challenge the trial court's finding. This finding

alone, in conjunction with a best-interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun,* 5th Dist. No. 2008CA00118, 2008–Ohio–5458, ¶ 45.

**{¶45}** If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R .C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

**{¶46}** The trial court determined that the child could not be placed with appellant within a reasonable time pursuant to R.C. 2151.414(E)(1), which requires the following findings:

**{¶47}** "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."

{¶48} A review of the record supports the trial court's decision that the child cannot be placed with appellant within a reasonable time and that the agency provided reasonable case planning and diligent efforts to assist appellant to remedy the problems that caused the child to be removed.  As is stated above, there was testimony that appellant had lost her housing in March of 2012, claimed that she was living with her father, and then refused to give the agency her address. As a result, the agency was unable to determine if the housing was appropriate for R.T., Jr.  In addition, appellant lacked stable employment throughout the case. While there was testimony that appellant obtained part-time employment in September of 2012, there was testimony that she had one other short term period of employment during pendency of the case. Moreover, appellant failed to attend Well Child appointments as required and had tested positive for marijuana on May 14, 2012 and October of 2012. In addition, appellant did not complete at Quest and dropped out of Renew with three or four sessions to go. As noted by the trial court in its decision, there were also was continuing concerns about appellant's ongoing relationship with R.T., which had been violent in the past. Furthermore, the trial court voiced concerns over appellant's smoking in the home while knowing that R.T., Jr. had asthma.

{¶49} We next turn to the issue of best interest. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. No.2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), citing *In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d

424 (8th Dist.1994). The trial court determined it was in the best interest of the child to be placed in the permanent custody of appellee pursuant to R.C. 2151.414(D), and we agree.

{¶50} At the hearing, there was testimony that R.T., Jr., who had been in the agency's custody since November 30, 2010, had significant behavioral problems and that he had been moved six times during the pendency of the case. Smith testified that his current foster parents had experience with children with similar issues and that they had adopted two such children and were interested in adopting R.T., Jr. Smith further testified that R.T., Jr. needed a stable permanent home and that he had been moved around too much. When asked if the benefit of permanent custody outweighed any harm in breaking the bond between appellant and her son, Smith testified affirmatively. Furthermore, the Guardian ad Litem, in her November 1, 2012, Report, recommended that permanent custody be granted to the agency. The Guardian noted that appellant had lost her housing, had stopped attending Quest and had an ongoing drug problem.

{¶51} In addition, there was testimony that R.T., Jr. had only seen appellant every other week for the past two years. As is stated above, there also was testimony that appellant, during her visits with R.T., Jr., did not interact with him enough and, during one visit, spent a great deal of time on the phone.

{¶52} Appellant, in her brief, notes that a family member with an approved home study was willing to take custody of R.T., Jr. However, this family member clearly stated that she was not interested in adopting R.T., Jr. and was only interested in keeping him on a temporary basis until appellant and R.T. could get their acts together.

**{¶53}** Based on the foregoing, we find that the trial court did not err in finding that R.T., Jr. could not or should not be placed with appellant within a reasonable period of time and that the grant of permanent custody to the agency was in his best interest.

**{¶54}** Appellant's two assignments of error are, therefore, overruled.

**{¶55}** Accordingly, the judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed.

By: Delaney, P.J.

Farmer, J. and

Wise, J. concur

_____

_____

_____

JUDGES

PAD/d0304

[Cite as *In re R.T.*, 2013-Ohio-1139.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN THE MATTER OF:                          :
                                           :
    R.T., JR.                            :
                                           :
                                           :
                                           :         JUDGMENT ENTRY
                                           :
                                           :
                                           :
                                           :         CASE NO. 2012 CA 00220


    For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed. Costs assessed to Appellant.


                                                  _____

                                                  _____

                                                  _____

                                                           JUDGES